KASOLD, Judge, filed the opinion of the Court. LANCE, Judge, filed a dissenting opinion.
*429 KASOLD, Judge:
Veteran Frank E. Coburn appeals through counsel a March 24, 2003, decision of the Board of Veterans’ Appeals- (Board) that denied entitlement to service connection for residuals of left and right leg injuries, and left and right hip injuries. The Secretary argues that the appeal must be remanded pursuant to Stegall v. West, 11 Vet.App. 268 (1998), because the specific instructions contained in a March 2001 Board remand order to secure a medical examination were not followed. Mr. Co-burn is satisfied with the medical report and does not raise the issue of any such error. He argues that the Board-decision is clearly erroneous and should be reversed. For the reasons set forth below, the Board’s decision will be set aside and remanded.
I. BACKGROUND
Mr. Coburn served on active duty in the U.S. Army from January 1954 to January 1956. Record (R.) at 26. The National Personnel Records Center reports that all of Mr. Coburn’s service medical records are missing and presumed destroyed in a 1973 fire. R. at 50, 626. In February 1994, Mr. Coburn filed a claim for service connection for bilateral hip and leg injuries stating that his injuries were sustained in service when he jumped from a telephone pole while assigned at Fort Leonard Wood, Missouri. R. at 79. His sister subsequently supported his claim with a statement that she knew of the telephone pole incident from her mother, who told her about it while Mr. Coburn was assigned at Fort Leonard Wood, Missouri.
A March 2001 Board decision noted that “the veteran and his family have to some extent laid the groundwork for inservice injuries, and there is evidence with regard to post-service injuries and disabilities” but found that “although there are some VA records in the file, there is no medical opinion of record which analyzes the potential relationship between ■ any service injury(ies) and/or inservice and post-service symptoms.” R. at 594. The 2001 Board remanded the claims presently on appeal with .instructions to arrange an orthopedic examination to ascertain the current nature, severity, and etiology of any orthopedic disorders of either leg or hip. R. at 595-99.
An examination was undertaken in October 2002. The examiner noted in his report that he had reviewed the claims file and the submitted medical history, and concluded that it was “at least as likely as not” that the leg and hip problems had their onset in service as a result of the telephone pole incident. R. at 658. The examiner also stated that “given that the patient denies other history of traumas or falls, this is the most likely explanation in my medical opinion.” R. at 658.. The report of the October 2002 examination is the only medical nexus report on record for Mr. Coburn.
In the decision on appeal, the 2003 Board rejected the examiner’s opinion -as incompetent because it appeared “to be based solely upon the veteran’s own statements regarding his medical history.” R. at 21. That Board stated that “the examiner’s review noted the absence of medical evidence of an injury to the veteran’s legs in service” and that the examiner “appears to have ignored the sequela of numerous left knee injuries after service beginning in 1975 in forming this opinion.” - R. at 21. The Board concluded that there was no competent evidence linking any of Mr. Co-burn’s medical disabilities to service and denied his claims. R. at 21-22.
ÍI. ANALYSIS
A. Waiver of Stegall and Other Bases for Remand,
The Secretary argues that this matter must be remanded pursuant to Ste- *430 gall to enforce compliance with the 2001 Board’s remand order that, inter alia, ordered a VA regional office (RO) to provide Mr. Coburn with a VA orthopedic examination for the purpose of ascertaining a medical nexus opinion. Secretary’s Brief (Br.) at 15. The Secretary asserts that although Mr. Coburn was given an orthopedic examination, this examination did not comply with the 2001 Board remand order because in making his decision the medical examiner did not review the medical records or the claims file, which was specifically required by the remand order. Secretary’s Br. at 16-17. Mr. Coburn, on the other hand, argues that he is satisfied with the medical examination report and does not seek another examination, and he further argues that Stegall provides procedural rights to the veteran, not the Secretary. Additionally, Mr. Coburn argues that he does not contest the Board’s determination in the section of its decision entitled “REASONS AND BASES FOR FINDINGS AND CONCLUSIONS, Preliminary matter: Duty to Assist” (R. at 4 through 7) and that he “does not seek a remand for purposes of additional development.” Appellant’s Br. at 7-8.
The Court notes that the right to “compliance with the remand orders” provided in Stegall is a process right guaranteed to VA claimants, not the Secretary. See Stegall, 11 Vet.App. at 271 (finding that remand by the Court or the Board “confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders” and imposes on the Secretary a “concomitant duty to ensure compliance with the terms of the remand” (emphasis added)). Moreover, it is the appellant, not the Secretary, who has the right to appeal a decision by the Board to the Court. See 38 U.S.C. § 7252(a) (stating that the Secretary may not seek review of a Board decision); 38 U.S.C. § 7266(a) (“In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans’ Appeals, a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed .... ” (emphasis added)); see also Padgett v. Nicholson, 19 Vet.App. 133, 150 (2005), withdrawn on other grounds, 19 Vet.App. 334 (2005) (“ ‘Secretary [ ] clearly has no right of appeal to this Court.’ ”); Williams v. Principi, 15 Vet.App. 189, 198 (2001) (citing section 7252(a) for the proposition that the Secretary may not seek review of a Board decision). Therefore, the Court will not grant a Stegall remand in the face of opposition by Mr. Coburn.
Mr. Coburn argues that reversal is appropriate in this case and he further states that he does not seek remand for the purposes of additional development. However, reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board’s decision. See Johnson v. Brown, 9 Vet.App. 7, 10 (1996). Generally, where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy. See Tucker v. West, 11 Vet.App. 369, 374 (1998); see also 38 U.S.C. § 7104(a), (d)(1) (stating that decisions of the Board shall be based on applicable provisions of law and regulation and that the Board shall provide a written statement of reasons or bases for its conclusions); Allday v. Brown, 7 Vet.App. 517, 527 (1995) (holding that statement “must be adequate to enable a claimant to understand the precise basis for the Board’s decision, as well as to facilitate informed review in this Court”).
The Court also notes, however, that, in contrast to a Stegall remand for compli- *431 anee with a Court order, which is a right guaranteed to an appellant, a remand on other grounds, particularly one necessitated because appellate review is frustrated because of inadequate reasons or bases, is not exclusively an appellant’s right. Upon review of the record and the Board decision, and as discussed below, the Court finds that the Board decision is defective in its reasons or bases thereby preventing proper review by the Court and concludes that remand, not reversal, is the appropriate remedy. See Tucker and Johnson, both supra; see also Kowalski v. Nicholson, 19 Vet.App. 171, 179 (2005) (duty of Board to fully explain its decision is heightened when records are lost); O’Hare v. Derwinski, 1 Vet.App. 365, 367 (1991) (same).
Regarding Mr. Coburn’s assertion that he does not seek remand for further development, the Court notes that there is no clear indication in the appellant’s briefing that he is knowingly and intentionally seeking to waive his right to a remand. See Janssen v. Principi, 15 Vet.App. 370, 373 (2001) (holding that to waive a procedural right a represented appellant “must first possess a right, he must have knowledge of that right, and he must intend, voluntarily and freely, to relinquish or surrender that right”). Moreover, in the overall context of his briefing, the Court perceives the assertion that remand is not being sought as an argument meant to bolster Mr. Coburn’s position that reversal is the appropriate remedy and not, as the dissent perceives, as an explicit waiver of a remand. Indeed, in this instance, waiver of a remand would, in essence, constitute an abandonment of the appeal. Unlike the dissent, the Court is not inclined to stretch Mr. Coburn’s arguments to this extent.

B. Inadequate Reasons and Bases

For service connection to be awarded, there must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances, lay evidence of an in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. See Hickson v. West, 12 Vet.App. 247, 253 (1999). The absence of any one element will result in the denial of service connection. In this case, Mr. Coburn states that he injured his knee while in service. His sister reports hearing about the in-service incident. His injury, however, cannot be confirmed by his service medical records because almost all of them are lost, through no fault of Mr. Coburn. He has numerous postservice injuries that arguably could be the cause of his claimed current disabilities. The only medical nexus opinion in the record opines that Mr. Coburn suffers from his claimed disabilities and that these disabilities are “at least as likely than not” related to his in-service injury. R. at 658. In rendering his opinion, the medical examiner stated that he had reviewed the claims file and all available medical records.
The Board could have found that the evidence preponderated against Mr. Coburn’s having suffered the reported in-service injury.[1] It did not. The Board could have found that Mr. Coburn had no current disability. It did not. Or, the Board could have found that he suffered the reported in-service injury but that there was no medical nexus between that injury and his current disability. The Board did not; at least its reasons or *432 bases do not adequately support that conclusion.
Rather, the Board rejected the medical report because the Board found that the report failed to address the postservice injuries suffered by Mr. Coburn, leading the Board to conclude that the medical examiner had not considered the entire file. That conclusion, however, is in stark contrast to the statements made by the medical examiner in the medical report. The medical examiner not only explicitly stated that he reviewed the claims file and all medical reports provided, he also explicitly noted that the appellant’s “pertinent past medical history and findings” were in the claims file (R. at 656), and he concluded his report by stating that “[g]iv-en that the patient denies other history of traumas or falls,” the most likely explanation was that his current disabilities were “at least as likely as not” the result of his in-service injury (R. at 658).
In reaching the conclusion that the medical examiner had not reviewed the claims file, the Board did not address the repeated statement by the medical examiner that he had reviewed the claims file or his specific reference to the appellant’s “pertinent past medical history and findings” that were in the claims file. Given the examiner’s explicit acknowledgment of the appellant’s past medical history as being-part of the claims file that he had reviewed, the Board should have discussed whether the medical examiner’s statement that Mr. Coburn denied other injuries (which led the medical examiner to conclude his current disabilities were related to the in-service injury) constituted a denial of any postservice injuries or, instead, postservice injuries not addressed in the claims file. Inasmuch as the Board rejected the medical report because the Board concluded the medical examiner failed to consider the claims file, the Board had a duty to adequately discuss those aspects of the report clearly indicating the conclusion opposite that of the medical examiner’s. See Fortuck v. Principi, 17 Vet.App. 173, 179 (2003) (It is incumbent upon the Board to “analyze the credibility and probative value of the [material] evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant.” (citations omitted)); Meyer v. Brown, 9 Vet.App. 425, 433 (1996) (Board cannot reject evidence favorable to claimant without providing an adequate statement of reasons or bases for its decision). This duty is heightened when, as here, service medical records are lost through no fault of a claimant. See Russo v. Brown, 9 Vet.App. 46, 51 (1996) (when service medical records are presumably destroyed, Secretary has heightened duty to assist the appellant in developing his claim, and Board has a heightened duty to “evaluate and discuss in its decision all of the evidence that may be favorable to the appellant”).
The Board also rejected the medical report because the Board determined that the examiner had relied on the testimony of Mr. Coburn. However, reliance on a veteran’s statements renders a medical report incredible only if the Board rejects the statements of the veteran. See Kowalski, supra (citing Wilson v. Derwinski, 2 Vet.App. 614, 618 (1992), for the proposition that Board may not disregard a medical opinion solely on the rationale that the medical opinion was based on a history given by the veteran); see also Reonal v. Brown, 5 Vet.App. 458, 460 (1993) (finding Board may reject medical opinion based on facts provided by the veteran previously found to be inaccurate); Swann v. Brown, 5 Vet.App. 229, 233 (1993) (finding Board is not bound to accept uncorroborated account of veteran’s *433 medical history but must assess the credibility and weight of the evidence provided by the veteran rejecting it). In this instance, the Board addressed what it determined were conflicting facts but it never rendered a finding with regard to the credibility of Mr. Coburn’s statements to the medical examiner. See Swann and O’Hare, both supra. Either the medical report was improvidently rejected (because Mr. Coburn’s statements were credible) or the Board failed to provide an adequate statement of reasons or bases with regard to any unstated finding that Mr. Coburn’s statements were not credible.
We further note that the rejection of the medical report in this instance — the only one in the record — left the record largely in the same condition it was in when the 2001 Board remanded the matter for the purpose of obtaining a medical nexus assessment because the claims file contained no such assessment. R. at 594. Yet, the 2003 Board failed to explain why it could proceed to render a decision on the claim when, based on basically the same evidence, the 2001 Board determined that a remand for a medical nexus opinion was necessary. The Board is required to provide a full explanation of the reasons or bases for its decisions. See 38 U.S.C. § 7104(a), (d)(1); Allday, supra; see also 38 U.S.C. §. 5103A; Wells v. Principi, 326 F.3d 1381, 1384 (Fed.Cir.2003) (stating that section 5103A(d) places a duty on Secretary to provide a medical examination or opinion where such opinion is necessary to make a decision on veteran’s claim for disability compensation).
Finally, we caution the Board that, although it may reject medical opinions, it may not then substitute its own medical judgment for those rejected. See Colvin v. Derwinski, 1 Vet.App. 171, 175 (1991), overruled on other grounds by Hodge v. West, 155 F.3d 1356, 1360 (Fed.Cir.1998); see also Hardin v. West, 11 Vet.App. 74, 79 (1998) (Board may not substitute its own medical judgment for independent medical evidence). When the only medical nexus evidence is rejected because the report is confusing or appears incomplete, it may be sent back for clarification or a new report may be obtained, see Bowling v. Principi, 15 Vet.App. 1, 12 (2001) (finding that under 38 C.F.R. § 19.9 (2000), “if further evidence or clarification of the evidence ... is essential for a proper appellate decision,” the Board shall remand the case to the RO); 38 C.F.R. § 19.9(a) (2003). If the Board determines it can render a decision on the claim in the absence of any medical nexus information, it must provide an adequate statement of reasons or bases for that determination and its ultimate decision.
On remand, Mr. Coburn will have the opportunity to present any additional evidence and argument in support of his claim, and the Board must consider any evidence and argument so presented. See Kay v. Principi, 16 Vet.App. 529, 534 (2002). The Court expects that the Secretary will provide expeditious treatment of this matter on remand. See 38 U.S.C. § 7112.
III. CONCLUSION
Based on the foregoing analysis, the decision of the Board is SET ASIDE and the matter is REMANDED for further development consistent with this opinion.

. We note only possible options of the Board with regard to the elements of service connection and do not imply that any possible finding would have been appropriate on the evidence in the record.